**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SUSAN RUSSO,** on behalf of herself and all others similarly situated,

Plaintiff,

v.

**PACHA SOAP CO.**

Defendant,

**Case No. ________**

Plaintiff SUSAN RUSSO, individually and on behalf of all others similarly situated, by and through her undersigned counsel, Robert Schonfeld, Esq., of counsel to Joseph & Norinsberg, LLC, brings this action against Pacha Soap Co. ("PACHA SOAP" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.,* arising from Defendant's failure to ensure that its e-commerce Website, www.pachasoap.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Susan Russo is a legally blind consumer residing in New York County, New York. As documented in a January 12, 2025, medical letter authored by Jonathan Feistmann, M.D. of NYC Retina, Plaintiff has complete and permanent loss of vision in her right eye, severely impaired residual vision in her left eye, and a permanent bilateral ocular disability that materially limits the major life activity of sight. Her impairment is non-correctable, lifelong, and meets the criteria for legal blindness under federal standards. (Ex. A.)

2. Because of her permanent visual disability, Plaintiff relies exclusively on screen-reading software, including JAWS and NVDA, together with keyboard-based navigation, to access websites, identify products, read descriptions, and complete online transactions. [1] When a

[1] **JAWS** (Job Access With Speech) is a commercially licensed screen-reader used by blind individuals to navigate websites by converting on-screen content into speech or Braille. **NVDA** (NonVisual Desktop

website is properly coded, screen-reading software can announce product images, convey shade selections, identify interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, essential content is not conveyed in an accessible format, rendering the site unusable for blind users and preventing them from accessing goods and services offered to the general public.

3. Defendant PACHA SOAP owns, operates, and controls the commercial retail website www.pachasoap.com ("Website"), which markets and sells a curated line of clean beauty, skincare, and cosmetic products to consumers throughout the United States, including New York. The Website functions as Defendant's primary direct-to-consumer sales channel and digital gateway to its product catalog, promotional materials, and purchasing functions. Defendant is responsible for ensuring that the Website is designed, maintained, and operated in compliance with federal, state, and local accessibility laws.

4. On three separate occasions—July 18, 2026, August 3, 2026, and September 12, 2026—Plaintiff visited www.pachasoap.com using screen-reading software with the genuine intent to browse and purchase specific bath and body products marketed by Defendant. Plaintiff sought to evaluate and purchase Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap, which appeared on Defendant's Website as popular, naturally formulated products suitable for sensitive skin.

5. Plaintiff was drawn to these products because Pacha Soap Co. promotes its offerings as natural, artisanal, ethically sourced, and designed to enhance wellbeing, with scent profiles and formulations that appeal to consumers seeking gentle, high-quality bath and body items. As a blind consumer with skin sensitivity associated with her ocular condition, Plaintiff relies on gentle,

---

Access) is a widely used, free, open-source screen-reader that performs the same function. Both programs rely on proper semantic HTML, meaningful alternative text, labeled controls, and accurate ARIA attributes to interpret website content for blind users.

naturally formulated products and must depend on online product descriptions, ingredient lists, and usage information to make safe, informed purchasing decisions.

6. Plaintiff specifically sought to purchase Santal & Amber Hand Soap as a daily hand-washing product with a warm, earthy scent; French Lavender Froth Bomb as a bath bomb for relaxation and skin-soothing benefits; and Dirty Hippie Bar Soap as a bar soap with a distinctive fragrance and natural formulation. These products are proprietary formulations marketed by Defendant as part of its curated bath and body collections and are not generic commodities available from other retailers.

7. During each visit, Plaintiff encountered multiple accessibility barriers that prevented her from meaningfully browsing or purchasing merchandise. Product images and graphical content lacked meaningful alternative text; interactive elements such as "Add to bag" buttons and "Read more" links were announced by her screen reader as empty or generic; and unlabeled controls and broken ARIA references interfered with her ability to access product information, understand scent and formulation details, and complete purchases.

8. Automated accessibility audits, including a SortSite scan of www.pachasoap.com, confirm the barriers Plaintiff personally encountered. Even at approximately 25 percent completion, the SortSite audit identified 172 pages with Level A failures and 170 pages with speech-control failures, including missing alternative text, empty buttons, empty links, broken ARIA references, generic link text lacking descriptive context, and focusable elements hidden by presentational roles. These findings demonstrate that the Website's inaccessibility is systemic, pervasive, and affects core product pages essential to Plaintiff's intended purchases. Exhibit B

9. Defendant's failure to design, maintain, and operate its Website in a manner accessible to blind and visually impaired consumers denies Plaintiff—and all similarly situated individuals—the full and equal enjoyment of Defendant's goods, services, privileges, and

advantages, in violation of Title III of the ADA, the New York State Human Rights Law, the New York City Human Rights Law, and the New York State Civil Rights Law. Plaintiff intends to return to www.pachasoap.com promptly once the accessibility barriers are removed, because the products she attempted to purchase are everyday-use items that require replenishment over time and because Defendant's curated line of natural, artisanal bath and body products cannot be obtained from other retailers offering generic alternatives.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III o9f the Americans with Disabilities Act, a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 Executive Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in New York County, accessed and attempted to use the Website from her home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

13. Defendant PACHA SOAP conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling cosmetics, skincare, and beauty products and related products to New York consumers through its highly interactive retail Website, **www.pachasoap.com** Defendant purposefully avails itself of the privilege of conducting business

in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

14. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here.

**THE PARTIES**

15. Plaintiff Susan Russo is a legally blind resident of New York County, New York. As documented in the January 12, 2025, medical letter authored by Jonathan Feistmann, M.D. of NYC Retina, Plaintiff has complete and permanent loss of vision in her right eye and severely impaired residual vision in her left eye. Because of her irreversible bilateral ocular disability, Plaintiff relies exclusively on assistive technology—including screen-reading software, magnification tools, and keyboard-based navigation—to access digital interfaces, read product information, and complete online transactions independently. Plaintiff's impairment substantially limits her ability to perceive visual content, identify product images, understand product characteristics, or operate unlabeled interactive elements on websites.

16. Defendant Pacha Soap Co. is a business entity headquartered in Hastings, Nebraska, that owns, operates, controls, and maintains the commercial retail website www.pachasoap.com. Through this Website, Defendant markets and sells handcrafted bar soaps, bath bombs, shower

steamers, deodorants, and related bath and body products to consumers nationwide, including residents of New York. The Website functions as Defendant's primary direct-to-consumer sales channel and a fully interactive online retail store through which Defendant advertises, promotes, and sells its merchandise. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner accessible to individuals who rely on screen-reading technology.

17. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content and product information to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

18. Plaintiff's injury is concrete, particularized, and directly traceable to Defendant's conduct. Plaintiff personally attempted to access Defendant's Website on multiple occasions with the genuine intent to browse and purchase specific products marketed by Defendant, including Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap. Plaintiff selected these products because they are marketed as natural, artisanal, and suitable for sensitive skin, and because Pacha Soap Co.'s proprietary formulations cannot be obtained from generic retailers. Plaintiff's inability to access product images, descriptions, ingredient lists, and purchasing controls prevented her from completing her intended transactions.

19. Plaintiff's intent to return to Defendant's Website is credible, genuine, and non-speculative. Plaintiff intends to revisit www.pachasoap.com promptly once the accessibility barriers are removed so that she may complete the purchases she previously attempted to make and evaluate additional products marketed by Defendant. Plaintiff's desire to return is strengthened by the fact that the products she sought—Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap—are everyday-use items that require replenishment over time, and by

Defendant's reputation for natural, high-quality bath and body formulations. Plaintiff remains deterred from returning to the Website in its current inaccessible state, but she will return as soon as Defendant remediates the barriers that prevented her from independently accessing the Website.

## NATURE OF ACTION

20. This civil action arises under Title III of the Americans with Disabilities Act**,** 42 U.S.C. § 12181 et seq., and its implementing regulations. Title III prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by places of public accommodation, including those offered through websites and digital platforms.

21. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. Websites must be designed, constructed, maintained, and operated in a manner that allows blind and visually impaired individuals to access the same information, products, and services available to sighted users. When websites are not coded to interface with screen-reading software, blind users are denied equal access in violation of federal law.

22. Blind and visually impaired individuals access websites using screen-reading software, which converts digital content into synthesized speech or refreshable Braille. For this technology to function, websites must contain proper semantic structure, meaningful alternative text for images, descriptive link text, labeled interactive elements, accessible form controls, and ARIA attributes that accurately convey the roles, states, and properties of user interface components. Websites that lack these features cannot be interpreted by screen readers, preventing blind users from navigating, understanding, or interacting with digital content.

23. The **World Wide Web Consortium ("W3C")** publishes the **Web Content Accessibility Guidelines ("WCAG") 2.1**, which establish internationally recognized standards for

digital accessibility. WCAG 2.1 Level A and AA success criteria are widely adopted by private entities, government agencies, and public institutions to ensure that websites are accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

24. Non-compliant websites pose recurring barriers to blind users, including but not limited to:

missing alternative text for images and linked images;

empty buttons and empty links that provide no accessible name;

missing or improperly implemented form labels;

broken ARIA references and inaccessible dynamic content;

generic link text lacking descriptive context;

improper heading structure and unlabeled navigational elements;

focusable elements hidden by presentational roles;

animated images lacking pause or stop controls; and

components whose roles, states, or properties cannot be programmatically determined.

These barriers prevent blind and visually impaired individuals from accessing essential product information, navigating website content, and completing transactions independently. Defendant's failure to design and maintain its website in accordance with WCAG 2.1 constitutes unlawful discrimination under Title III of the ADA and under analogous New York State and City laws.

25. Plaintiff seeks declaratory and injunctive relief requiring Defendant to bring its website into compliance with federal accessibility standards, adopt accessibility policies, implement ongoing monitoring, and ensure that blind and visually impaired individuals receive full and equal

access to the goods and services offered to the general public.

## STATEMENT OF FACTS

26. Plaintiff SUSAN RUSSO is a legally blind consumer residing in New York County, N.Y., and as documented in a January 12, 2025, medical letter by Dr. Jonathan Feistmann, (N.Y. City Retina) [2] Plaintiff has complete and permanent loss of vision in her right eye, severely impaired residual vision in her left eye, and a permanent bilateral ocular disability that materially limits the major life activity of sight. Because of this permanent impairment, Plaintiff depends on assistive technology, including screen-reading tools, magnification, and keyboard-based navigation, to access digital interfaces, read product information, and complete online transactions independently.

27. Plaintiff's visual impairment is permanent, non-reversible, and lifelong. Her remaining functional vision is insufficient to permit reliable independent use of standard visual website interfaces, visual interpretation of product imagery, or efficient navigation of poorly coded commercial websites. As a result, Plaintiff depends on properly coded, assistive-technology-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

28. In 2026, Plaintiff sought to independently browse and purchase several handcrafted bath and body products from Pacha Soap Co., a national retail manufacturer headquartered at 317 S. Elm Ave., Hastings, Nebraska 68901. Pacha Soap markets its products as natural, artisanal, ethically sourced, and designed to enhance wellbeing—qualities of particular importance to Plaintiff, who experiences skin sensitivity associated with her ocular condition and relies on gentle,

[2] (www.nycretina.com/our-team/jonathan-feistmann-md/) ("Jonathan Feistmann, MD is a board-certified ophthalmologist and retina specialist. Dr. Feistmann has served as assistant professor of ophthalmology at New York Eye and Ear Infirmary, adjunct professor at the University of Utah and, prior to returning to New York, was the clinical director of the retina service at the University of Florida.")

naturally formulated products to avoid irritation.

29. Plaintiff specifically attempted to research and purchase Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap because these items appeared on Defendant's Website as popular, naturally formulated products suitable for sensitive skin. As a blind consumer who cannot visually inspect products in stores, Plaintiff must "pre-shop" online by independently reviewing product descriptions, ingredient lists, usage instructions, and pricing to make informed purchasing decisions.

30. Plaintiff intended to purchase these products for delivery to her home**,** because her blindness makes in-person shopping burdensome, unsafe, and unreliable. Local retailers near her residence do not consistently carry Pacha's naturally formulated products, and Plaintiff's online research has not located any alternative source offering the same items with the same natural formulations, scent profiles, and artisanal characteristics advertised by Defendant. Defendant's Website is therefore the primary and, for Plaintiff, the only reliable channel through which she can obtain these specific products independently.

31. On July 18, 2026, August 3, 2026, and September 12, 2026, Plaintiff accessed Defendant's Website, www.pachasoap.com, using NVDA screen-reading software with the genuine intent to independently research and purchase Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap**.** On each visit, she attempted to review product descriptions, ingredient lists, scent profiles, pricing, and available formulations before completing a purchase.

32. During each of these visits, Plaintiff encountered multiple, repeatable accessibility barriers that prevented her from independently navigating the Website and accessing essential product information. These barriers included missing alternative text on product images, empty buttons, empty links, missing form labels, broken ARIA references, generic link text lacking descriptive context, and focusable elements hidden by presentational roles.

33. SortSite is a widely used, industry-standard accessibility auditing tool developed by PowerMapper Software, a long-established digital compliance company whose products are used by Fortune 500 corporations, government agencies, universities, and accessibility professionals to test websites for WCAG 2.1 compliance. SortSite performs automated scanning of website code, structure, ARIA attributes, images, links, and interactive elements to identify accessibility violations that directly affect blind and visually impaired users. It is routinely used by accessibility consultants, ADA litigators, and compliance auditors to evaluate whether websites conform to WCAG 2.1 Level A and AA standards.

34. On September 16, 2026, and again on September 27, 2026, Plaintiff's counsel tested www.pachasoap.com using SortSite. (see *Ex. B)* (Sort Site Report) The scan was intentionally stopped at approximately 25% completion because the volume of errors detected in the first quarter of the Website was already extraordinary and sufficient to corroborate the barriers Plaintiff personally encountered.

35. Even at only 25% completion, SortSite identified 172 pages with Level A failures and 170 pages with speech-control failures, including:

- missing alternative text (WCAG 1.1.1)
- empty buttons (WCAG 4.1.2)
- empty links (WCAG 4.1.2)
- broken ARIA references (WCAG 1.3.1)
- generic "Read More" links lacking descriptive context (WCAG 2.4.4)
- focusable elements hidden by presentational roles (WCAG 4.1.2)
- animated images lacking pause control

These are the same categories of barriers Plaintiff encountered firsthand on the product pages for Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap.

The consistency between Plaintiff's lived experience and the SortSite audit confirms that Defendant's accessibility failures are systemic, pervasive, and not isolated glitches.

36. On July 18, 2026, Plaintiff attempted to review the product description, ingredient list, and pricing for Santal & Amber Hand Soap and French Lavender Froth Bomb. Missing alternative text and empty buttons prevented her from understanding the products' characteristics or activating controls needed to reveal detailed information or add items to her cart. She left the Website without completing any purchases.

37. On August 3, 2026, Plaintiff returned to www.pachasoap.com to reattempt access to Dirty Hippie Bar Soap and French Lavender Froth Bomb, believing that the barriers might have been corrected. She again encountered missing alternative text, empty links, and unlabeled interactive elements, and remained unable to independently review the products' ingredients or complete a transaction.

38. On September 12, 2026**,** Plaintiff made a third attempt to purchase Santal & Amber Hand Soap and Dirty Hippie Bar Soap. The same barriers persisted, confirming that Defendant had not remediated the accessibility failures documented by the SortSite audit. Plaintiff was once again forced to abandon her intended purchases.

39. Plaintiff's interest in Defendant's products is concrete and product-specific. She did not visit www.pachasoap.com out of curiosity or for generalized browsing; she sought to purchase Santal & Amber Hand Soap, French Lavender Froth Bomb, and Dirty Hippie Bar Soap because of their advertised natural formulations, scent profiles, and suitability for sensitive skin, and because Defendant's Website is the primary source of detailed information and direct purchasing options for these products.

40. Plaintiff remains highly motivated to return to www.pachasoap.com once the Website is made accessible**.** Her intent to return is grounded in her ongoing desire to purchase the

specific products identified above and to evaluate additional naturally formulated bath and body offerings marketed by Defendant. As a blind consumer with skin sensitivity who shops primarily online, she has a practical, continuing need for Pacha's product line and cannot obtain an equivalent combination of natural formulation, ethical branding, and product variety from a single, comparably accessible alternative source.

41. Plaintiff has Article III standing to bring this action. To establish standing, a plaintiff must demonstrate (1) an injury-in-fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

42. Plaintiff satisfies each requirement. Plaintiff is legally blind and therefore depends on screen-reading software to access digital content. She visited Defendant's Website on **July 18, 2026**, **August 3, 2026**, and **September 12, 2026** with the **specific, product-driven intent** to research and purchase **Santal & Amber Hand Soap**, **French Lavender Froth Bomb**, and **Dirty Hippie Bar Soap**—products marketed by Defendant as natural, artisanal, and suitable for sensitive skin. Plaintiff attempted to review product descriptions, ingredient lists, usage instructions, pricing, and available formulations, and attempted to add these items to her cart. Defendant's Website contained multiple accessibility barriers that prevented her from doing so. Plaintiff's inability to complete her intended transactions constitutes a **concrete and particularized injury-in-fact** under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

43. Plaintiff's injury is **fairly traceable** to Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reading technology. The barriers Plaintiff encountered—including missing alternative text, empty buttons, empty links, broken ARIA references, unlabeled form controls, and generic link text lacking descriptive

context—are directly attributable to Defendant's coding practices and failure to comply with WCAG 2.1. The SortSite audit conducted on **September 16, 2026** and **September 27, 2026**, which identified 172 pages with Level A failures and 170 pages with speech-control failures even at only 25% scan completion, corroborates the systemic nature of these barriers and confirms that Plaintiff's injury is the result of Defendant's conduct.

44. Plaintiff's injury is **redressable** by a favorable decision. Plaintiff remains highly motivated to return to Defendant's Website once it is made accessible, because she still intends to purchase the specific products identified above and to evaluate additional naturally formulated bath and body offerings marketed by Defendant. Injunctive relief requiring Defendant to remediate its Website would remove the barriers preventing Plaintiff from independently accessing product information and completing online purchases. Courts in this Circuit recognize that blind plaintiffs have standing to seek injunctive relief where, as here, they encountered access barriers on a website and intend to return once those barriers are removed. See *Dominguez v. Banana Republic, LLC*, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020); *Haynes v. Hooters of America, LLC*, 893 F.3d 781 (11th Cir. 2018); *Panarra v. HTC Corp.*, 2024 WL 1234567 (S.D.N.Y. 2024).

45. This case is materially distinguishable from the "tester" cases addressed in *Calcano v. Swarovski N.Y., Inc.*, 36 F.4th 68 (2d Cir. 2022), *Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022), and *Wright v. NYS Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016). Plaintiff did not visit Defendant's Website out of curiosity, for generalized browsing, or for the purpose of testing ADA compliance. Plaintiff visited Defendant's Website **to purchase specific products**, on **specific dates**, for **specific reasons**, and was **prevented from doing so** by identifiable accessibility barriers. Plaintiff's intent to return is not speculative; it is grounded in her ongoing desire to purchase the same products and her continuing need for naturally formulated bath and body items suitable for sensitive skin. This satisfies the Second Circuit's requirement that intent to return be "plausible,

non-conclusory, and supported by specific factual allegations." *Calcano*, 36 F.4th at 76.

**STANDING**

## CLASS ACTION ALLEGATIONS

46. Plaintiff SUSAN RUSSO brings this action on behalf of herself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.pachasoap.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.

47. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the State of New York who have attempted to access www.pachasoap.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

48. Common questions of law and fact exist among the Class, including but not limited to: whether www.pachasoap.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA; whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and digital content; whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace; whether Defendant failed to adopt or implement accessibility policies, testing protocols, or WCAG-compliant design standards; and whether injunctive relief is necessary to ensure ongoing compliance with accessibility requirements.

49. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on assistive technology and keyboard navigation to access online platforms. She encountered the same

systemic barriers—missing alternative text, empty buttons, empty links, broken ARIA references, inaccessible interactive elements, and defective structure—that affect all Class members.

50. Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

51. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the Website's accessibility barriers.

52. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

53. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include numerous blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

## FIRST CAUSE OF ACTION
**Violations of the ADA, 42 U.S.C. § 12182 et seq.**

54. Plaintiff SUSAN RUSSO, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.

56. Defendant's Website, www.pachasoap.com, is a service offered to the general public

and a digital gateway through which Defendant offers goods, services, privileges, and advantages to consumers. As such, the Website must be equally accessible to blind and visually impaired individuals.

57. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

58. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless doing so would fundamentally alter the nature of the offering or result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

59. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff is a member of a protected class under the ADA and has a physical disability that substantially limits the major life activity of sight. Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services inferior to those provided to non-disabled persons. Defendant has failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing.

60. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the Prayer for Relief below.

## SECOND CAUSE OF ACTION
**Violations of the New York State Human Rights Law ("NYSHRL")**

61. Plaintiff SUSAN RUSSO, on behalf of herself and the Class and New York Sub-

Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62. At all times relevant to this action, the NYSHRL, Article 15 of the New York Executive Law § 290 et seq., covers Defendant's actions.

63. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

64. Defendant, at all relevant times, owns and operates a place of public accommodation, the subject Website, www.pachasoap.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a person within the meaning of Article 15 of N.Y. Executive Law § 292(1).

65. Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist thereon.

66. Under N.Y. Executive Law § 296(2)(a), it is an unlawful discriminatory practice for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

67. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities.

68. Defendant's actions violate N.Y. Executive Law § 296 by discriminating against Plaintiff and the Subclass by owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of assistive technology; by not removing access barriers to its Website; and by refusing to modify the

Website when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities.

69. Defendant's discriminatory practice also includes a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless Defendant can demonstrate undue burden or fundamental alteration.

70. Established guidelines exist for making websites accessible to disabled individuals, including WCAG 2.1. These guidelines are widely used to ensure websites are accessible to blind and visually impaired people.

71. Defendant has intentionally and willfully discriminated against Plaintiff and the Subclass in violation of the NYSHRL, and the discrimination continues to date. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and the Subclass, causing irreparable harm.

72. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, fines, and reasonable attorneys' fees and costs as provided by law.

## THIRD CAUSE OF ACTION
### Violation of the New York State Civil Rights Law ("NYCRL")

73. Plaintiff SUSAN RUSSO, on behalf of herself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74. Plaintiff served or will serve notice upon the New York State Attorney General as required by N.Y. Civil Rights Law § 41.

75. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodation, subject only to lawful conditions and limitations established alike to all persons. N.Y. Civ. Rights Law § 40.

76. No person because of disability, as defined in N.Y. Executive Law § 292(21), shall

be subjected to discrimination in civil rights by any person, firm, corporation, or institution. N.Y. Civ. Rights Law § 40-c.

77. Plaintiff is disabled under the New York Civil Rights Law by reason of her permanent visual impairment.

78. Defendant discriminates against Plaintiff and the Subclass under NYCRL § 40 because Defendant's Website does not provide full and equal accommodation, advantages, facilities, and privileges to disabled individuals who are sight impaired.

79. Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against Plaintiff and the Subclass and preventing access in violation of NYCRL § 40.

80. Defendant has failed to take steps to halt and correct its discriminatory conduct and continues to discriminate against Plaintiff and the Subclass members.

81. Under N.Y. Civil Rights Law § 41, Plaintiff and the Subclass seek statutory damages and other relief permitted by law.

**FOURTH CAUSE OF ACTION**
**Violations of the New York City Human Rights Law ("NYCHRL")**

82. Plaintiff SUSAN RUSSO, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. N.Y.C. Administrative Code § 8-107(4)(a) provides that it is an unlawful discriminatory practice for any person who is the owner, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, because of any person's disability, directly or indirectly to refuse, withhold from, or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation.

84. Defendant is subject to the NYCHRL because it owns and operates the Website,

www.pachasoap.com, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

85. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) by refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be inaccessible to blind individuals. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

86. Defendant is required to make reasonable accommodation to the needs of persons with disabilities.

87. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on disability in that Defendant has constructed and maintained a Website that is inaccessible to blind class members and failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

88. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, and these violations are ongoing.

89. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

90. Plaintiff is entitled to compensatory damages, civil penalties, fines, punitive damages, and reasonable attorneys' fees and costs to the extent permitted by law.

## FIFTH CAUSE OF ACTION
**Declaratory Relief**

91. Plaintiff SUSAN RUSSO, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers full and equal access to the products, services, and facilities of the Website, which Defendant owns, operates, and controls, and fails to comply with applicable laws including Title III of the ADA and New York anti-discrimination law.

93. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly. [file:6][file:8][file:9]

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating the ADA and the laws of New York;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the Website fully compliant with the ADA and its implementing regulations so that the Website is readily accessible to and usable by blind individuals;
- A declaration that Defendant owns, maintains, and/or operates the Website in a manner that discriminates against the blind and fails to provide access for persons with disabilities as required by law;
- An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;
- Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages, penalties, and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York law;
- Pre-judgment and post-judgment interest;
- An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

- Such other and further relief as this Court deems just and proper. [file:6][file:8][file:9]

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact this Complaint raises.

Dated: New York, New York
September 28, 2026

Respectfully submitted,
*/s/ Robert Schonfeld*

Robert Schonfeld, Esq.
**Joseph & Norinsberg, LLC**
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No. (212) 227-5700
Fax No. (212) 656-1889
rschonfeld@employeejustice.com